FILED
CLERK, U.S. DISTRICT COURT

2005 MAY -2 P 3 44

DEPUTY CLERK

IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| XL SPECIALTY INSURANCE CO., f/k/a INTERCARGO INSURANCE CO., an Illinois corporation<br><br>     Plaintiffs,<br><br><br>  vs.<br><br><br>KLD CONTRACTING INC., a Utah corporation, and LEA ANN ADAMS, individually,<br><br>     Defendants. | FINDINGS OF FACT AND CONCLUSIONS OF LAW<br><br><br><br><br>Case No. 2:03CV530 TC |

This is an action by Plaintiff XL Specialty Insurance Co. ("XL"). Plaintiff seeks indemnification pursuant to a General Agreement of Indemnity ("the Agreement") with Defendant KLD Contracting, Inc., ("KLD"), for a settlement payment made on KLD's behalf to the City of St. George, Utah.

Defendants KLD and Lea Ann Adams have asserted that (1) Lea Ann Adams never signed the indemnity agreement; (2) even if Ms. Adams did sign the agreement, it is void for lack of consideration; and (3) the payment made by XL Specialty on the development bond to St. George was excessive. Accordingly, in October, 2004, a trial was held to the court, sitting without a jury, to determine these issues.

The court now enters its Findings of Fact and Conclusions of Law.  The court concludes that (1) Ms. Adams did sign the indemnity agreement; (2) the indemnity agreement is not void for lack of consideration; and (3) XL's payment to St. George pursuant to the development bond was not excessive.  Accordingly, XL is entitled to all losses, costs, and expenses (including attorneys' fees) XL has sustained pursuant to the terms of the Agreement.

### FINDINGS OF FACT

XL was the surety on an improvement development bond provided by KLD, as bond principal, to the City of St. George, Utah ("St. George"), to secure the construction and installation of various public improvements in connection with the development of the Dixie Downs Retirement Community, Phase 1 ("Development").  KLD served as general contractor for Dixie Downs Company, LLC ("Dixie Downs") in construction of the Development.  Kelly Adams had an ownership interest in Dixie Downs.

In connection with KLD's general application for contractor bonding, KLD executed and delivered the Agreement to XL. Michael Vowles, of the Leavitt Agency of Spanish Fork, was responsible for the execution and delivery of the Agreement.

The Agreement provides that Kelly and Lea Ann Adams "jointly and severally hereby covenant and agree . . . [t]o indemnify .. . [XL] from and against any and all . . . losses, costs, damages, attorneys' fees and expenses which arise by reason of, or in consequence of, the execution by [XL] of any bond on behalf of [KLD.]" (Pla. Trial Ex. 6 ("Indemnity Agreement") at ¶ 1). The Agreement also provides that XL may "adjust, settle or compromise any claim,

2

demand, suit or judgment arising under said bond or bonds, and with respect to any such claim . .

. take whatever action it may deem appropriate; and its determination . . . shall be binding and

conclusive upon the Indemnitors." (Id. at ¶ 7).   The Agreement further states that:

> Liability hereunder shall extend to and include the full amount of any and all
> money paid by [XL] in settlement or compromise of any claims, suits and/or
> judgments thereunder in good faith under the belief that it was liable therefor,
> whether liable or not, as well as any and all disbursements on account of costs,
> attorneys' fees and expenses . . . which may be made under the belief that such
> were necessary, whether necessary or not.

(Id. at ¶ 15).  The Agreement was signed by Kelly Adams and also bears the signature of Lea

Ann Adams as indemnitors.  Kelly Adams has filed for bankruptcy and is not a party to this

lawsuit.

At the request of KLD, on May 2, 2000, XL issued a development bond to St. George to

secure the installation of public improvements and related infrastructure required by St. George

for approval of the plat for Dixie Downs.  The bond was in the amount of $435,884.86.  The

terms of the bond required KLD to assure installation of public utilities and related

improvements to the Development as required by St. George in connection with is approval of

the Development plan.  Due to financial difficulties during the course of its work on the

Development, KLD was unable to complete the required improvements.  As a result, St. George

made a claim against the bond for the amount necessary to complete the public improvements.

XL notified KLD of St. George's claim in an effort to give them the opportunity to

resolve the claim directly with St. George.  But no resolution was reached.  KLD and Kelly

Adams cooperated with XL in its efforts to mitigate the claimed damages, and to hold others

responsible for KLD's inability to perform.  XL eventually settled St. George's claim against the

bond for $200,000.00.  Neither Lea Ann Adams nor Kelly Adams objected to the settlement terms.  To date, XL has recovered no funds from KLD to reduce or mitigate its losses on the bond.

**Lea Ann Adam's Signature on the Indemnity Agreement:**

The Agreement was signed on KLD's behalf by E. Kelly Adams, president, and attested to by Laramie Gonzales, vice-president of KLD.  Additionally, the document bears the signatures of Kelly and Lea Ann Adams as indemnitors.  The document was notarized by Sara Courtney and states that on February 1, 2000, E. Kelly Adams and Lea Ann Adams executed the Agreement.

XL has a general policy that requires a spouse's signature as a precondition to the issuance of a surety bond or related bonding to a contractor.  Michael Vowles testified that XL "wouldn't issue the bond without [Lea Ann Adams'] signature there."  (October 18, 2004 Trial Transcript ("Tr. Vol. I") at 105).  Earlier, Lea Ann Adams signed another Agreement in 1999 relating to New Horizons Development, a separate company owned by her husband Kelly Adams.  The signatures on the 1999 Agreement and the 2000 Agreement are similar.

Lea Ann Adams testified that she did not sign the Agreement and also that she never intended to do so.  She testified that she told an employee of the Leavitt Agency that: "my intent was not to sign the document."  (October 19, 2004 Trial Transcript at 26).  Kelly Adams testified that he told Mr. Vowles: "If I don't get this bond . . . I'm financially destroyed.  I cannot finish St. George and get my money back out of it.  But I know the only thing my wife will sign with me is a divorce paper right now."  (Tr. Vol. I at 157).  Kelly Adams further testified that Lea Ann

4

Adams persistently refused to sign the agreement despite the fact that failure to obtain the bond would have meant financial ruin for himself and KLD and that, to his knowledge, she had never signed the agreement. The court finds otherwise.

Sara Courtney, a former employee of the Leavitt Group who notarized the signatures of Kelly and Lea Ann Adams on the Agreement, provided particularly credible and objective testimony. She testified that she witnessed Lea Ann Adams sign the Agreement and that she notarized the document for Ms. Adams. Michael Vowles, who executed and delivered the Indemnity Agreement, also testified that he witnessed Ms. Adams sign the agreement before May 2, 2000. Ms. Courtney testified that:

> The bond had sat for a while waiting for her signature. And when [Lea Ann Adam] came in, she asked several questions about the need, what it meant. She – I did not think she was going to sign the document. It felt more like she had come in to clarify some items in her mind about what was going on. And she did sign before she left, so I was a little surprised that that happened.

(Id. at 123). Ms. Courtney also testified that she would not have notarized the Indemnity Agreement for Kelly and Lea Ann Adams if she had not witnessed them sign the document. While Ms. Courtney could not recall having met Lea Ann Adams before January 2000, she also testified that she had witnessed and notarized Ms. Adams' signature on the 1999 indemnity agreement on behalf of New Horizons Development. Ms. Courtney could not, at trial, recall the exact date the KLD Indemnity Agreement was signed. She did recall that Lea Ann Adams signed the agreement after it was signed by Kelly Adams and Laramie Gonzales.

Based on the above, the court finds that Lea Ann Adams did sign the Agreement.

**Consideration for the Bond and the Reasonableness of the Settlement:**

Defendants have asserted that even if Lea Ann Adams did sign the Agreement, there was no consideration to support her obligation. Defendants also assert that the Indemnity Agreement applied only to twenty-six of the forty-four units in Phase I of the Development and this renders the $200,000.00 settlement paid to St. George unreasonable.

KLD encountered financial difficulties over the course of its work on the Development which resulted in KLD's inability to complete the improvements required by St. George. As a result of this failure to perform, St. George made a claim against XL in January 2001, for the amount necessary to complete the required improvements. (Stipulated Pretrial Order at 4-5, ¶ 4(j)). XL notified KLD, Kelly Adams, and Lea Ann Adams of the claim on January 11, 2001. (Id. at 5, ¶4(k)).

Under the Agreement, KLD's liability extends to and includes "all amounts paid by [XL] in good faith under the belief that 1) [KLD] was in default . . . ; 2) [XL] was or might be liable therefor; 3) such payments were considered necessary or advisable to protect any of [XL's] rights as to avoid or lessen [XL's] liability or alleged liability." (Indemnity Agreement at ¶ 1(A)). The Agreement further states that XL:

> shall have the right to reimbursement of its expenses, premiums and attorneys' fees, including in-house attorney's fees, costs, and expenses hereunder, irrespective of whether any Bond loss payment has been made by [XL]. In any suit on this Agreement, [XL] may recover its further expenses and attorneys' fees, including in-house attorneys' fees, costs and expenses incurred in such suit.

(Id. at ¶1(E)).

XL, with the cooperation of KLD and Kelly Adams, conducted an investigation into St.

6

George's claim and began discussions with St. George, KLD, and the bank which was financing

the Development. XL hired an independent engineering consultant who "concluded that XL was

potentially exposed to the entire amount of the bond." (Tr. Vol. I at 37). The bond amount was

$435,884.86. XL and Kelly Adams obtained bids from contractors to complete the

improvements required by St. George. Testimony at trial indicated that the amounts of those bids

were $357,000.00, $355,000.00 and $298,000.00. (Id. at 34, 63-64, 184). XL eventually settled

the St. George claim for $200,000.00 on March 5, 2003.

> The Agreement provided that XL
>
> may adjust, settle or compromise any claim, demand or suit or judgment arising
> under said bond . . . , and with respect to any such claim . . ., take whatever action
> it may deem appropriate; and its determination as to whether any such claim . . .
> shall be settled or defended <u>shall be binding and conclusive upon the Indemnitors</u>.

(Indemnity Agreement at ¶ 7). Additionally, XL was under no obligation to give the indemnitors

notice "of any act, fact or information coming to the notice or knowledge of [XL] concerning or

affecting its rights or liabilities under any such bond . . . or the rights and liabilities of the

Indemnitors herein." (Id. at ¶ 8). While Mr. Adams testified that the estimates discussed above

were not an accurate reflection of the actual cost to complete the work, the court finds that the

amount for which XL settled the claim is reasonable under the terms of the Agreement.


## CONCLUSIONS OF LAW

This court has proper diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

Venue is not in dispute.

Having found that Lea Ann Adams did sign the Indemnity Agreement and that she is

7

thereby bound by it, the court turns to the question of whether the Indemnity Agreement was supported by consideration.

In Utah, "[c]onsideration is present when there is an act or promise given in exchange for the other party's promise." Healthcare Services Group v. Utah Dep't of Health, 40 P.3d 591, 596 (Utah 2002) (citing Aquagen Int'l, Inc. v. Calrae Trust, 972 P.2d 411, 413 (Utah 1998)). As noted above, XL promised to provide a bond in an amount up to $435,884.86.  In exchange, KLD, Kelly Adams, and Lea Ann Adams agreed to indemnify XL "from and against any and all . . . losses, costs, damages, attorney's fees and expenses which arise by reason of, or in consequence of, the execution by [XL] of any bond on behalf of [KLD.]" (Indemnity Agreement at ¶ 1).  Without the bond, KLD would not have received approval of the development plan from St. George.  "Promises made by a party pursuant to a bilateral contract to do an act or to forbear from doing an act that would be detrimental to the promisor or beneficial to the promisee may constitute the consideration for the other's promise." Resource Management Co. v. Weston Ranch, 706 P.2d 1028, 1036 (Utah 1985).  Because there were mutual promises given in exchange for each other, the Agreement is supported by adequate consideration.

Having determined that Lea Ann Adams signed the Agreement and that the Agreement was supported by consideration, Lea Ann Adams is bound by the terms of the Agreement.  Aa discussed above, XL's payment of $200,000.00 to settle the claim was reasonable under the terms of the Agreement.

8

## JUDGMENT

For the above reasons, judgment is granted for the Plaintiff. KLD and Lea Ann Adams are jointly and severally liable to XL for the total of all losses, costs, and expenses (including attorneys' fees) XL has sustained pursuant to the terms of the Agreement. (Indemnity Agreement at ¶1). Through November 18, 2004, that amount is not less than $267,693.80, on which interest continues to accrue at the statutory rate of 10% per annum, a daily rate of $72.99 until paid. (Affidavit of Carrie Ann Hoffman attached as Ex. A to Pla. Proposed Findings of Fact and Conclusions of Law). See also U.C.A. § 15-1-1.

DATED this **2** day of May, 2005.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge

9